UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

CIVIL ACTION NO. 07-CV-43-GFVT

THOMAS ALLEN BURROWS, SR.                                                                PLAINTIFF

VS:                             **MEMORANDUM OPINION AND ORDER**

DIANE SMITH, ROYMAN RAMIREZ,
and SUZANNE R. HASTINGS,                                                                 DEFENDANTS

\*\* \*\* \*\* \*\* \*\*

      Thomas Allen Burrows, Sr. ("Burrows"), an individual confined in the United States Penitentiary in Terre Haute, Indiana ("U.S.P.-Terre Haute"), has filed a civil rights complaint under 28 U.S.C. § 1331, pursuant to the doctrine announced in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971). His motion to proceed *in forma pauperis* [Dkt. 3] has been granted by separate Order. [Dkt. 5]

      The Court screens civil rights complaints pursuant to 28 U.S.C. § 1915A. *McGore v. Wrigglesworth*, 114 F.3d 601, 607-08 (6th Cir. 1997). As Burrows is appearing *pro se*, his complaint is held to less stringent standards than those drafted by attorneys. *Burton v. Jones*, 321 F.3d 569, 573 (6th Cir. 2003); *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999). During screening, the allegations in his complaint are taken as true and liberally construed in his favor. *Urbina v. Thoms*, 270 F.3d 292, 295 (6th Cir. 2001). But the Court must dismiss a case at any

time if it determines the action (I) is frivolous or malicious, or (ii) fails to state a claim upon which relief can be granted. 28 U.S.C. § 1915(e)(2).

## I. FACTUAL BACKGROUND

Prior to his incarceration, Burrows was involved in three separate motor vehicle accidents in 1993, 2001, and 2003. As a result of these accidents, Burrows underwent surgeries on his back, feet, and ankles, including the placement of a steel pin in one ankle. Notwithstanding these surgeries to treat his injuries, when Burrows arrived at USP-Big Sandy on April 22, 2005, he still suffered from permanent orthopedic and neurological impairments. Burrows alleges that as a result of these impairments he is not steady on his feet when he walks, but that the BOP has failed to provide him with appropriate treatment by, at a minimum, providing him with appropriate shoes. The record indicates that Burrows was given a "soft shoes pass" on June 10, 2005 for one year, and hence was in effect on the dates in question.

At approximately 8:15 p.m. in the evening on January 26, 2006, Burrows's foot "collapsed," causing him to fall down five steps to the bottom of the stairs. When a corrections officer contacted medical staff for assistance, a nurse in another unit indicated that she was not immediately available but that Burrows would be examined as soon as possible. For reasons not disclosed in the record, Burrows was not seen until the next day.

Medical staff examined Burrows at the infirmary the morning following the fall, and administered an analgesic by injection to alleviate the pain. X-rays were taken of his foot and ankle, and were sent outside of the facility for review. Burrows was diagnosed with strains to his back and ankle, and staff concluded that he should be seen by an orthopedist to rule out the possibility that he had dislocated his ankle. Burrows's foot was placed in a cast, and he was

given a wheelchair to protect his ankle. Burrows was given a prescription for Tylenol with codeine to address his pain and placed on convalescence for thirty days.

The next day Burrows was taken to Our Lady of Bellafonte Hospital in Ashland, Kentucky, where he was examined by the emergency room physician. The doctor concluded from his examination and review of the X-rays that Burrows did not have a medically-treatable back injury as a result of the fall, but that he had dislocated his right ankle. The physician manipulated the ankle back into position during the visit, and Burrows was returned to the institution.

Over the following weeks, Burrows complained of back pain, and fell in his cell on February 12, 2006. He was seen by prison medical staff on a number of occasions, and was continued on Tylenol with codeine for treatment of his foot pain and with over-the-counter pain medications to address his back pain. Examination notes dated March 2, 2006 by Dr. Ramirez state "770 for ankle repair," which Burrows alleges indicates that he was to be transferred to another facility and scheduled for a surgery to fuse the bones in his ankle to provide stronger and more reliable support. On March 21, 2006, an MRI of his back and ankle apparently revealed only the continued degenerative effects of Burrows's injuries from his prior motor vehicle accidents. Burrows remained in a wheelchair at all times prior to his transfer to USP-Terre Haute on May 25, 2006, and was seen by prison medical staff on several occasions.

## II. DISCUSSION

Prisoners have the constitutional right to adequate medical care while in custody. *Farmer v. Brennan,* 511 U.S. 825, 832 (1994); *Estelle v. Gamble,* 429 U.S. 97, 104 (1976). Thus, when prison officials display "deliberate indifference to the serious medical needs of prisoners," they

commit cruel and unusual punishment in violation of the Eighth Amendment. *Estelle*, 429 U.S. at 104. In reviewing the sufficiency of a complaint, the Supreme Court has held that "[i]n order to state a cognizable claim [under the Eighth Amendment with regard to medical care] a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to the plaintiff's serious medical needs." *Estelle*, 429 U.S. at 106. Therefore, a prisoner must show both "deliberate indifference" and "serious medical needs." *Id.*

Burrows first appears to complain regarding the overnight delay in treatment after his fall on the evening of January 26, 2006. After falling down five steps late in the evening, Burrows was not seen by prison medical staff until the next morning. Burrows makes no allegation that this 12-16 hour delay in receiving diagnosis or treatment caused any concrete, independent injury, nor would the record support any such inference. While immediate treatment for any injury may be ideal, it is not constitutionally required. A brief delay in treatment is insufficient, by itself, to warrant any inference that medical staff were deliberately indifferent to a prisoner's medical care. *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). The Eighth Amendment prohibits only cruel and unusual punishment, meaning a reckless disregard for the prisoner's self-evident need for medical treatment of a serious medical condition. Here, Burrows fell down five stairs late in the evening, and was extensively examined and treated within twenty-four hours, including follow up care by outside physicians. Burrows' allegations fall far short of stating a claim for deliberate indifference to his serious medical needs. *Hicks v. Frey*, 992 F.2d 1450, 1456-57 (6th Cir. 1993).

Second, in a nonspecific manner Burrows alleges that the treatment of his ankle is inadequate, suggesting that he should have been transferred to another facility to fuse his ankle

4

bones to provide further support and been provided different shoes so that his fall could have been avoided in the first place. The record discloses, however, that from the time when he was first delivered into BOP custody at U.S.P.-Big Sandy until his subsequent transfer to U.S.P.-Terre Haute, Burrows was seen repeatedly by prison medical staff and provided extensive medical care to address his chronic back and foot pain. Where a prisoner is provided medical care but he challenges merely its adequacy, there is no deliberate indifference so long as such care meets "minimal standards of adequacy." *Holmes v. Sheahan*, 930 F.2d 1196, 1199 (7th Cir. 1991) (quoting *Benson v. Cady*, 761 F.2d 335, 339 (7th Cir. 1985)). After his fall in January 2006, Burrows was given both prescription and over-the-counter pain medication, was provided a wheelchair for the remaining duration of his stay at the prison, was scheduled for convalescence to help his ankle recover for a one-month period, was seen by an outside physician, X-rays were taken of his ankle, his injury was treated, and an MRI was taken of his back and ankle to ensure no significant injury had occurred. In sum, Burrows was provided with substantial medical care. Burrows' claim is that more was required, including a surgery to fuse his ankle bones. But his disagreement with the way the BOP medical staff and contract physicians practice medicine amounts, at most, to a disagreement over medical judgment, which states no constitutional claim. *Byrd v. Wilson*, 701 F.2d 592 (6th Cir. 1983); *Davis v. Powell*, 110 Fed.Appx. 660, 664 (6th Cir. 2004) ("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in state tort law." (quoting *Graham ex rel. Estate of Graham v. County of Washtenaw*, 358 F.3d 377, 385 (6th Cir. 2004)); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989) ("[W]e disavow any attempt to

second-guess the propriety or adequacy of a particular course of treatment. Along with all other aspects of health care, this remains a question of sound professional judgment."). Even if that judgment were so deficient as to constitute medical malpractice, "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106; *Birrell v. Brown*, 867 F.2d 956, 958 (6th Cir. 1989). An inmate does not have the right to choose his medical treatment, and the mere fact that he disagrees with the treatment he is given does not serve to establish that his medical care was inadequate, let alone that those treating him acted with deliberate indifference. *Durham v. Nu'Man*, 97 F.3d 862, 868-69 (6th Cir. 1996); *Brooks v. Celeste*, 39 F.3d 125, 128-29 (6th Cir. 1994); *Farmer v. Brennan*, 511 U.S. 825, 835 (1994); *Meriwether v. Faulkner*, 821 F.2d 408, 413 (7th Cir. 1987); *Estelle*, 429 U.S. at 105-06. Because Burrows' Complaint does not allege "acts or omissions sufficiently harmful to evidence deliberate indifference to the plaintiff's serious medical needs," it must be dismissed. *Estelle*, 429 U.S. at 106.

### III.  CONCLUSION

The Court being sufficiently advised, it is **ORDERED** as follows:

(1)     Plaintiff's Amended Complaint [Dkt. 7] is **DISMISSED WITH PREJUDICE**.

(2)     The Court certifies that any appeal would not be taken in good faith. 28 U.S.C. § 1915(a)(3); *McGore v. Wrigglesworth*, 114 F.3d 601, 610-11 (6th Cir. 1997); *Kincade v. Sparkman*, 117 F.3d 949 (6th Cir. 1997).

(3)     Judgment shall be entered contemporaneously with this Memorandum Opinion and Order in favor of the Defendants.

This the 12th day of December, 2007.



Signed By:

*Gregory F. Van Tatenhove*

United States District Judge